IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD ALAN ROSE | 6:11-CV- 06246 RE |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

**REDDEN**, Judge:

Plaintiff Richard Alan Rose ("Rose") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for the calculation and payment of benefits.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1966, Rose obtained a general equivalence degree, and has worked as a electrician, masker, and tire repairer. In April 2008, Rose filed an application for disability insurance benefits and SSI benefits, alleging disability since June 1, 2006, due to depression, post-traumatic stress disorder ("PTSD"), chemical imbalance, and mood disorder. Tr. 160. His applications were denied initially and upon reconsideration. After a February 2010 hearing, an Administrative Law Judge ("ALJ") found him not disabled in an opinion issued in May 2010. Rose's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Rose had the medically determinable severe impairments of carpal tunnel syndrome, polysubstance abuse disorder, rule-out amphetamine-induced psychotic disorder with hallucinations, and anti-social personality disorder. Tr. 19.

The ALJ determined that Rose retained the residual functional capacity to perform a full range of work at all exertional levels, but is limited to tasks that involve only "occasional interaction with co-workers and no interaction with the general public." Tr. 21. The ALJ found that Rose could frequently, but not constantly, engage in bilateral handling and fingering. *Id.*

The ALJ found that Rose was able to perform his past work as an electrician, and in the alternative, retained the ability to perform other work, such as a janitor. Tr. 24-5.

The medical records accurately set out Rose's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are

familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Rose contends that the ALJ erred by: (1) improperly weighing physician testimony; and (2) finding he retains the ability to work as an electrician. .

### I. Physician Opinion

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Kurt Brewster, M.D.

Dr. Brewster conducted an orthopedic examination of Rose in September 2008. Tr. 241-51. Dr. Brewster concluded that Rose was able to stand or walk six hours in an eight hour day with 15 minute breaks every two hours. Tr. 251.

The ALJ "gave great weight" to Dr. Brewster's findings and opinion, but stated that Dr. Brewster had found "no exertional, postural, or manipulative limitations." Tr. 22. The ALJ's residual functional capacity finding did not include a limitation of standing or walking to six

3 - OPINION AND ORDER

hours out of eight with 15 minute breaks every two hours. Nor did the ALJ provide a reason to reject that portion of Dr. Brewster's opinion.

The VE testified that a limitation to standing or walking six hours out of eight, with 15 minute breaks every two hours, would preclude work as a janitor and all of Rose's past work. Tr. 88-89, 251.

Rose argues, in essence, that this court should credit as true Dr. Brewster and the VE and find the ALJ's determination unsupported by substantial evidence.

The Commissioner argues that the vocational expert's assumption that Rose would need to stand and walk more than six hours to perform medium work as a janitor or electrician is inconsistent with the Social Security Administration's policy which defines the full range of medium work as requiring standing or walking for a total of approximately six hours in an eight hour workday. SSR 83-10 available at 1983 WL 31251, *6. The Commissioner notes that the vocational expert's testimony conflicts with the definition of medium work in the *Dictionary of Occupational Titles.*

The ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job unless the ALJ inquires whether the testimony conflicts with the *Dictionary of Occupational Titles. Massachi v. Astrue,* 486 F.3d 1149, 1153-54 (9th Cir. 2007). Here, the ALJ stated that he would assume the vocational expert's testimony "is consistent with the *DOT* unless you tell me otherwise." Tr. 81. An ALJ may rely on expert testimony which contradicts the *DOT,* "but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the vocational expert's testimony deviated from the *DOT* without evidence to support that deviation. Dr. Brewster's opinion regarding Rose's limitation to standing or walking six hours out of eight with 15 minute breaks every two hours is uncontradicted, and the ALJ failed to articulate any reason to reject that opinion. Therefore, the ALJ's determination of Rose's residual functional capacity is not supported by substantial evidence.

## B. Allan R. Kirkendall, Ph.D.

Dr. Kirkendall examined Rose in September 2008, and diagnosed Alcohol Abuse, continuous, Amphetamine Abuse, continuous, Rule-out Amphetamine-induced Psychotic Disorder with hallucinations, and Antisocial Personality Disorder. Tr. 426. Dr. Kirkendall found that Rose is "completely incapable of engaging in appropriate social interactions." Tr. 425.

The VE testified that a person who is incapable of engaging in appropriate social interactions could not perform any of the identified jobs because there is at least supervisory contact in each job. Tr. 90.

The ALJ gave "great weight" to Dr. Kirkendall's opinion, but found that Rose could have "occasional" contact with co-workers and with the general public. Tr. 21. The ALJ noted that Dr. Kirkendall assigned a Global Assessment of Functioning ("GAF") score of 55, "suggesting only moderate difficulties in social and vocational functioning." Tr. 23. A GAF score is "a rough estimate" of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). The GAF score, alone, is not a specific and legitimate reason to reject Dr. Kirkendall's unconflicted opinion that Rose is incapable of engaging in appropriate social interactions.

///

5 - OPINION AND ORDER

Case 6:11-cv-06246-RE    Document 19    Filed 07/26/12    Page 6 of 10

### C. H. R. Henderson, M.D.

Dr. Henderson was Rose's treating psychiatrist. He found Rose was moderately limited in his ability to sustain a routine without special supervision and to carry out detailed instructions, the ability to work in coordination with or proximity of others, the ability to accept instruction and respond to criticism, to ability to get along with co-workers, and the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

Dr. Henderson found Rose markedly limited in the ability to maintain concentration, persistence and pace, the ability to perform activities within a schedule, the ability to maintain regular attendance and be punctual, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a reasonable pace without an unreasonable number and length of rest periods, and the ability to interact appropriately with the public. Dr. Henderson stated that the onset of these limitations was July 2008. Tr. 416-21.

Dr. Henderson stated that Rose's combined disorders :

> limit his ability to function in a work setting. He would not be able to work with the public due to anxiety/panic attacks nor would he be able to work in close proximity or coordinate with co-workers. He would be over reactive to criticism by supervisors and could easily over react and act out especially if panic attacks occur.

Tr. 421.

The VE testified that a moderate limitation in the ability to accept instruction and respond appropriately to criticism would impact a person's ability to keep any job. Tr. 91. The VE

examined the form Dr. Henderson used and testified that the impairments indicated would, individually and collectively, preclude all work. *Id.*

The ALJ gave "significant weight" to Dr. Henderson's conclusion that Rose was moderately limited in his ability to understand, remember and carry out simple or detailed instructions, and to maintain socially appropriate behavior. The ALJ gave less weight to Dr. Henderson's opinion that Rose was markedly limited in his ability to maintain attention and concentration for a full workday or workweek. Tr. 23. The ALJ stated that Dr. Henderson's opinion was contradicted by treatment notes indicating that Rose was stable with medications and counseling.

As to attention and concentration, the ALJ noted that Dr. Henderson's opinion was contradicted by Dr. Kirkendall's conclusion that Rose "appears to be capable of concentration and attention though he is not a persistent individual." Tr. 425. Dr. Kirkendall stated that Rose's "immediate recall and short-term memory are intact if one can make sure he is attending." Tr. 424. The latter phrase indicates some ambivalence about Rose's concentration and attention.

The ALJ stated that the claimant's increased anxiety symptoms in the winter of 2009 "seem to be prompted by situational stressors involving his mother's cancer and his effort to self-medicate....this discrepancy suggests that Dr. Henderson's assessment is heavily influenced by the claimant's situational stressors, rather than chronic psychological symptoms." Tr. 23-24.

The ALJ offered specific and legitimate reasons to choose Dr. Kirkendall's opinion over that of Dr. Henderson as to attention and concentration. However, the Commissioner concedes that the ALJ failed to offer any reason to reject Dr. Henderson's opinions that Rose had other moderate and marked limitations. The Commissioner argues that this was harmless error.

In evidence submitted to the Appeals Council after the hearing before the ALJ, Dr. Henderson wrote:

> I diagnosed Mr. Rose with Post-traumatic stress disorder, with panic attacks, chronic due to death of a friend in MOA in 1995, Probable Adult Attention Deficit Disorder and Dysthymic Disorder.
>
> A stable mood with medication and counseling is not indicative of an ability to sustain activity in this area. The stress of a routine job would be expected to cause the exacerbation of his symptoms, and would be likely to interfere with him maintaining employment.
>
> The Claimant's combination of impairments have prevented him from sustaining work for many years.
>
> Dr. Kirkendall noted in his evaluation that, Mr. Rose, because of his antisocial personality disorder is completely incapable of engaging in appropriate social interactions. I agree with that conclusion, independent of any drug or alcohol factors.

Tr. 458-59.

The Commissioner argues that Dr. Henderson's opinions of several elements of Rose's mental limitations appear to be based on panic attacks resulting from Post-traumatic stress disorder ("PTSD"), and the PTSD diagnosis was based solely on the reports of Rose and his wife. The Commissioner quotes Dr. Henderson's note that the "above diagnosis of PTSD, chronic was made by patient's self report and corroborated by his spouse. Tr. 459.

Dr. Henderson considered Rose's symptoms and noted other evidence of mental illness, including flattened affect, reduced hygiene, and depressed mood. Tr. 404, 408. Moreover, the record contains other evidence of a PTSD diagnosis, including a July 2006 Posttraumatic [sic] Stress Diagnostic Scale Profile Report, and June 2008 PTSD diagnosis by Lee Vanbeuzekom. Tr. 217, 239.

8 - OPINION AND ORDER

...

The limitations identified by Drs. Kirkendall and Henderson were not properly credited by the ALJ.

## II. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

9 - OPINION AND ORDER

The Vocational Expert testified that, if the physicians' opinions are credited, Rose would be unable to maintain employment. Tr. 90-92.

Accordingly, this matter is remanded for the calculation and payment of benefits.

## CONCLUSION

For these reasons, the ALJ's decision that Rose is not disabled is not supported by substantial evidence. The decision of the Commissioner is reversed and this case is remanded for the calculation and payment of benefits.

IT IS SO ORDERED.

Dated this 26 day of July, 2012.

JAMES A. REDDEN
United States District Judge